UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

BRYAN O. CRANE,

       Plaintiff,

v.                                  Case No:  2:13-cv-518-FtM-38DNF

UNITED STATES OF AMERICA,

       Defendant.
_____/

## ORDER[1]

This matter comes before the Court on Defendant United States of America's Motion to Dismiss Amended Complaint for Lack of Subject Matter Jurisdiction (Doc. #18) filed on February 3, 2014.  Plaintiff *pro se* Bryan O. Crane filed a Response to Defendant's Motion to Dismiss (Doc #19) on February 18, 2014.  Thus, Defendant's Motion is now ripe for review.

## BACKGROUND

On February 17, 2000, Plaintiff, then an employee of the United States Department of the Navy, successfully filed a claim for workers' compensation benefits under the Federal Employees' Compensation Act ("FECA").  (Doc. #17; Doc. #8-1 at ¶ 3).  Plaintiff

---

[1] Disclaimer:  Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites.  These hyperlinks are provided only for users' convenience.  Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.  By allowing hyperlinks to other Web sites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the Court has no agreements with any of these third parties or their Web sites. The Court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

stopped working in March 2000, and he has since received FECA disability compensation with some interruption and restatement.[2]  (Doc. #18-1 at ¶ 3).

In June 2003, the United States Department of Labor's Office of Workers' Compensation Programs ("OWCP") found a conflict of medical opinion as to whether Plaintiff continued to be totally disabled from work.  (Doc. #18-1 at ¶ 5).  The OWCP referred Plaintiff for an independent medical examination, which resulted in a determination that he was able to perform limited duty.  (Doc. #18-1 at ¶ 5).  Plaintiff was offered, but refused, a light duty assignment.  (Doc. #18-1 at ¶ 5).  As a result, the OWCP terminated his benefits.  Plaintiff appealed to the Employees' Compensation Appeals Board ("ECAB").  (Doc. #18-1 at ¶ 5).  On September 2, 2005, the ECAB reversed the OWCP's decision to terminate Plaintiff's benefits and awarded him retroactive compensation.  (Doc. #18-1 at ¶ 5; Doc. #18-2).

Plaintiff subsequently underwent vocational rehabilitation through the OWCP. (Doc. #18-1 at ¶ 7).  On February 5, 2009, the OWCP advised Plaintiff that it had scheduled a second medical opinion examination with an orthopedic surgeon and that refusing to attend the examination would result in a suspension of his compensation. (Doc. #18-1 at ¶ 7).  Plaintiff, however, refused the examination.  (Doc. #18-1 at ¶ 7).  The OWCP informed Plaintiff that it would suspend his compensation if he did not show good cause for failing to undergo the examination.  (Doc. #18-1 at ¶ 7).  On March 10, 2009, Plaintiff wrote to the OWCP, asserting it was inappropriate to require him to appear for additional medical examinations.  (Doc. #18-1 at ¶ 7).  Approximately two weeks later,

---

[2] As of January 27, 2014, Plaintiff has received $967,811.59 in gross disability compensation and $60,542.89 in total medical payments. (Doc. #18-3).

the OWCP suspended Plaintiff's compensation effective April 12, 2009.  (Doc. #18-1 at ¶ 7).   Plaintiff appealed, and the ECAB ultimately found that the OWCP had properly followed its procedures and suspended Plaintiff's compensation.  (Doc. #18-4).  With his FECA benefits suspended, Plaintiff elected to receive disability retirement benefits from the United States Office of Personnel Management ("OPM") starting on April 21, 2009. (Doc. #18-1 at ¶ 9).

In December 2011, the OWCP reconsidered its decision to suspend Plaintiff's FECA benefits.  (Doc. #18-1 at ¶ 10).  Plaintiff explained to the OWCP that he did not undergo the scheduled orthopedic examination because he felt a neurologist was the more appropriate specialist.  (Doc. #18-1 at ¶ 10).   The OWCP decided that it had erroneously suspended Plaintiff's compensation and awarded him payment for benefits lost from April 12, 2009, to February 12, 2011.  (Doc. #18-6).  Plaintiff thereafter elected to receive FECA compensation in lieu of the OPM benefits.  (Doc. #18-7).

Sometime thereafter, Plaintiff unsuccessfully tried to expand his FECA benefits to include chiropractic treatment for spinal subluxation.  (Doc. #18-1 at ¶ 11).  The OWCP denied his claims in decisions dated August 5, 2011, December 6, 2011, and May 11, 2012, because Plaintiff had not submitted evidence to establish a spinal subluxation. (Doc. #18-1 at ¶ 11).  The OWCP denied Plaintiff's request for reconsideration, and he appealed to the ECAB.  (Doc. #18-1 at ¶ 11).  On June 13, 2013, the ECAB affirmed the OWCP, finding Plaintiff had failed to submit medical evidence to establish that his spinal subluxation was related to his work-related injury.  (Doc. #18-8).  The ECAB also found the OWCP properly denied Plaintiff's requests for further review.  (Doc. #18-8).

On May 7, 2013, the OPM notified the OWCP that Plaintiff had an overpayment of benefits totaling $35,204.33.  (Doc. #18-1 at ¶ 12).  The OPM had the OWCP deduct $495.00 from Plaintiff's FECA benefits until the overpayment was repaid in full.  (Doc. #18-1 at ¶ 12).  Plaintiff requested the OPM to reconsider its overpayment determination.  (Doc. #18-1 at ¶ 12).  The OPM instructed the OWCP to stop the deductions temporarily, but not before an initial deduction of $495.00 was made.  (Doc. #18-10).  Plaintiff requested a refund to which the OWCP directed him to the OPM who had exclusive jurisdiction over the issue.  (Doc. #18-11).

On July 15, 2013, Plaintiff commenced this action *pro se* against Defendant, challenging the administration of his benefits under FECA and the Federal Tort Claims Act ("FTCA").  (Doc. #1).  The Court granted Defendant's Motion to Dismiss for lack of subject matter jurisdiction on October 31, 2013.  (Doc. #11).  Plaintiff thereafter filed a Motion to Reopen the Case (Doc. #13), which the Court granted on December 2, 2013, and allowed Plaintiff to file an amended response to Defendant's Motion to Dismiss.  (Doc. #14).  The Court thereafter denied Defendant's Motion to Dismiss without prejudice and granted Plaintiff leave to file an amended complaint so he could attempt to assert constitutional claims he had raised in his response.  (Doc. #16).  On January 15, 2014, Plaintiff filed an Amended Complaint.  (Doc. #17).

Liberally interpreting the fifty-page Amended Complaint, Plaintiff alleges that Defendant's administration of FECA benefits violated his due process and equal protection rights under the Fifth and Fourteenth Amendments.  (Doc. #17 at 2).  To that end, Plaintiff asserts, as he did in the first Complaint (Doc. #1), that Defendant (1) "forc[ed him] to submit to unnecessary and unreasonable Independent Medical

Evaluation/Second Opinion Examinations (IMEs)"; (2) repeatedly and illegally reduced and suspended his FECA benefits; (3) refused to reimburse him for medical expenses allowed under FECA; and (4) improperly took his benefits.  (Doc. #17 at 4).  He further claims that the "administrative process" under FECA has "devolved into [an] arrogant, corrupt, incompetent, abusive, and unconstitutional process," and he calls for oversight over the OWCP and ECAB "to prevent illegal actions or abuse of position and power."[3] (Doc. #17 at 3-4).  He goes on to assert that FECA's "administrative process" has grossly degraded his physical health.  (Doc. #17 at 3).  Finally, Plaintiff alleges the FECA process "singles out a specific group of U.S. citizens (disabled employees) for discrimination and exclusion."  (Doc. #17 at 2).

Plaintiff, therefore, requests the Court declare him totally and permanently disabled from work, stop the OWCP from requiring him to attend "any and all IMEs, and bar OWCP from contacting plaintiff for any reason except to facilitate payment of disability benefits." (Doc. #17 at 49).  In addition, Plaintiff seeks monetary damages in the amounts of $62,604.00 for loss of investment income, $495.00 for benefits improperly deducted, $300,000.00 for past medical bills, $100 million in damages for financial, mental and physical harm, reimbursement for all future medical expenses, and court costs and attorney's fees.  (Doc. #17 at 49-50).

Defendant now moves to dismiss the Amended Complaint (Doc. #17) for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

---

[3] Plaintiff also requests the Court to order the Department of Labor ("DOL") to implement safeguards that would guarantee his due process and equal protection rights and allow him to challenge DOL's alleged illegality and abuse of power.  (Doc. #17 at 50).

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(1), a district court may dismiss a case if subject matter jurisdiction is not present.  Fed. R. Civ. P. 12(b)(1).  Motions to dismiss for lack of subject matter jurisdiction attack jurisdiction facially and/or factually.  See Carmichael v. Kellogg, Brown & Root Servs., Inc., 572 F.3d 1271, 1279 (11th Cir. 2009); Morrison v. Amway Corp., 323 F.3d 920, 925 n.5 (11th Cir. 2003).  Where, as here, a defendant raises a factual attack on subject matter jurisdiction, the district court may look outside the four corners of the complaint to determine if jurisdiction exists.[4]  See Eaton v. Dorchester Dev., Inc., 692 F.2d 727, 732 (11th Cir. 1982).  In factual attacks, the presumption of truthfulness afforded to a plaintiff under Rule 12(b)(6) does not attach.  See Scarfo v. Ginsberg, 175 F.3d 957, 960 (11th Cir. 1999) (citing Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990)).  Since the Court's power to hear the case is at issue in a Rule 12(b)(1) motion, courts are free to weigh evidence outside the complaint (e.g., affidavits, declarations, and deposition testimony).  See Carmichael, 572 F.3d at 1279; Eaton, 692 F.2d at 732.

Pertinent here, courts liberally construe *pro se* pleadings and hold them to a less stringent standard than pleadings drafted by an attorney.  See Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003) (citing Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998)).  "The district court has an obligation to look behind the label of a *pro se* motion and, if possible, interpret it as any request for relief over which the court may have jurisdiction."  Gilmore v. Dir., U.S. Dep't of Labor, Office of Workers' Comp., 455 F.

---

[4] In support of its current Motion to Dismiss (Doc. #18), Defendant has attached the Declaration of Julia A. Tritz, the Deputy Director for Federal Employees' Compensation, Office of Workers' Compensation Programs, and other exhibits to show that the ECAB heard Plaintiff's issues with his FECA compensation.

App'x 934, 936 (11th Cir. 2012) (citation omitted).  Nevertheless, *pro se* litigants are still required to abide by procedural rules.  See  Moton v. Cowart, 631 F.3d 1337, 1341 n.2 (11th Cir. 2011).

## DISCUSSION

FECA is a comprehensive and exclusive workers' compensation scheme for federal civilian employees who are injured while performing their work duties.  See 5 U.S.C. § 8102(a); cf. Noble v. United States, 216 F.3d 1229, 1234 (11th Cir. 2000) ("The benefits available under FECA are primarily medical expense reimbursement and disability compensation that represents a percentage of the claimant's salary prior to his injury." (citation omitted)).  FECA is federal employees' exclusive remedy for on-the-job injuries.  See 5 U.S.C. § 8116(c); see also Lockheed Aircraft Corp. v. United States, 460 U.S. 190, 194 (1983)  ("In enacting this provision, Congress adopted the principal compromise - the '*quid pro quo*' - commonly found in workers' compensation legislation: employees are guaranteed the right to receive immediate, fixed benefits, regardless of fault and without need for litigation, but in return they lose the right to sue the Government.").  As such, FECA is designed to provide all administrative remedies available to recipients under the statute.[5]

FECA grants the Secretary of Labor authority to, among other things, (1) decide all questions arising under the statute, 5 U.S.C. § 8145; (2) prescribe rules and regulations necessary to administer and enforce the FECA, 5 U.S.C. § 8149; and (3) require an

---

[5] If a claimant considers himself aggrieved by the OWCP's final determination, he may (1) within thirty (30) days request a hearing before an OWCP hearing representative or request that such representative review the written record, 5 U.S.C. § 8124(b)(1), 20 C.F.R. §10.616; (2) within one year, request reconsideration, 5 U.S.C. § 8128, 20 C.F.R. §10.607(a); or (3) within one year, file an appeal with the Employees' Compensation Appeals Board, 20 C.F.R. § 10.625.

employee to undergo medical examinations, 5 U.S.C. § 8123.  Per its statutory authority, the Secretary has delegated responsibility for administering and implementing FECA to the Director of the OWCP.  See 5 U.S.C. § 8145.  "The Secretary retains the ability to review an award for or against payment of benefits at any time on his own motion, or by application."  Gilmore, 455 F. App'x at 936 (citing 5 U.S.C. § 8128(a)).

FECA specifically forecloses "judicial review of the Secretary's decision allowing or denying an award of benefits."   Id. (citing 5 U.S.C. § 8128(b)).  "Conclusions of law and fact made by the Secretary or the [Employees' Compensation Appeals Board] are also immune from judicial review."  Woodruff v. U.S. Dep't of Labor, 954 F.2d 634, 637 (11th Cir. 1992) (citation omitted).  Federal courts, however, may exercise jurisdiction over the Secretary's final decision when (1) there is a colorable constitutional claim; or (2) a clear statutory mandate or prohibition has been violated.  Id. at 639-40.

As previously stated, Plaintiff alleges due process and equal protection violations under both the Fifth and Fourteenth Amendments in the administration of his FECA compensation.  (Doc. #17).  The Court observes, however, that Plaintiff's due process and equal protection claims involve challenges to FECA and Defendant's administration of FECA benefits; therefore, Plaintiff's allegations do not implicate the Fourteenth Amendment.  See Betts v. Brady, 316 U.S. 455, 462 (1942) ("Due process of law is secured against invasion by the federal Government by the Fifth Amendment and is safeguarded against state action in identical words by the Fourteenth."); Swisher Int'l, Inc. v. Schafer, 550 F.3d 1046, 1059 n.13 (11th Cir. 2008) ("[T]he principles of equal protection are applied to the federal government through the Due Process Clause of the

Fifth Amendment." (citing Bolling v. Sharpe, 347 U.S. 497, 498-500 (1954)).[6]  Thus, the Court will consider Plaintiff's due process and equal protection claims in the context of the Fifth Amendment.

### A. Due Process

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Gillmore, 455 F. App'x at 936-37 (quoting Matthews v. Eldridge, 429 U.S. 319, 333 (1976)).  "The government cannot deprive someone who has an entitlement to access to the courts to assert that right unless the government's interests outweigh those of the private litigant." Woodruff, 954 F.2d at 641 (citation omitted).

Based on the procedural history summarized above, Plaintiff has clearly been afforded ample opportunity to appear and be heard, and to appeal the administration of his FECA claims.  He challenged the OWCP's decisions on at least four occasions, finding success twice, and he continues to receive FECA benefits for his work-related injury to date.  See Gibbs v. United States, 865 F. Supp. 2d 1127, 1153 (M.D. Fla. 2012) (finding plaintiff "fail[ed] to adequately allege how the scheduled recoupment hearing before the Branch of Hearings and Review . . . violate[d] any clear statutory mandate or the Constitution, presumably the right to procedural due process").  Plaintiff cannot evade FECA's jurisdictional bar by couching his FECA challenges as a due process violation.

---

[6] Regardless of whether Plaintiff's claims fall under the Fifth Amendment or Fourteenth Amendment, the Court would apply the same analysis.  See e.g., Adarand Constructors, Inc. v. Pena, 515 U.S. 200, 217–18 (1995) (collecting cases supporting the "general rule" that the '"Court's approach to Fifth Amendment equal protection claims has always been precisely the same as to equal protection claims under the Fourteenth Amendment'") (quoting Weinberger v. Wiesenfeld, 420 U.S. 636, 638 n. 2 (1975)); Geneva Towers Tenants Org. v. Federated Mortg. Investors, 504 F.2d 483, 487 (9th Cir. 1974) ("The standards utilized to find federal action for purposes of the Fifth Amendment are identical to those employed to detect state action subject to the strictures of the Fourteenth Amendment." (citation omitted)).

See Woodruff, 954 F.2d at 642-43 (affirming dismissal of an FECA benefits claim after finding the plaintiff's constitutional due process claim was "wholly without merit" and was merely a statutory challenge "framed as a due process violations").  Stated differently, Plaintiff cannot state a colorable constitutional claim by reframing his grievances with FECA's administration process as a violation of his due process rights.  Moreover, Plaintiff's argument that only a corrupt and illegal administrative process could result in the improper administration of his FECA benefits is equally deficient.  "[T]he vehemence of [his] allegation[] is not a substitute for a legally viable cause of action."  Kerrigan v. Chao, No. 04-CV-1189, 2004 U.S. Dist. LEXIS 21500, at *19-*20 (E.D. Pa. Oct. 26, 2004) (finding that the plaintiff merely restated his contention that he was improperly denied FECA benefits).

The relief Plaintiff requests further confirms that he does not seek an "opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  Gillmore, 455 F. App'x at 936-37 (quotation omitted).  Plaintiff asks this Court to (1) declare him totally and permanently disabled from work; (2) stop the OWCP from requiring him to attend "any and all IMEs"; (3) bar the OWCP from contacting him for any reason except to facilitate payment of disability benefits; and (4) award him compensatory and other damages. (Doc. #17 at 49-50).  Yet, these remedies are not available for an alleged due process violation.  See Raditch v. United States, 929 F.2d 478, 481 (9th Cir. 1991) ("A violation of procedural rights requires only a procedural correction, not the reinstatement of a substantive right to which the claimant may not be entitled on the merits." (footnote omitted)).

Contrary to Plaintiff's contention, he has been provided full due process in the consideration of his FECA claims. Accordingly, this Court is without jurisdiction to hear Plaintiff's due process claim. See Fed. R. Civ. P. 12(b)(1).

### B. Equal Protection

Next, Plaintiff alleges that Defendant treated him differently than similarly situated federal employees in violation of the equal protection clause. (Doc. #17). To succeed on an equal protection claim, a plaintiff must show (1) he was treated differently and less favorably than similarly situated individuals; and (2) the defendant unequally applied a code or provision for the specific purpose of intentionally discriminating against him. See Campbell v. Rainbow City, Ala., 434 F.3d 1306, 1314 (11th Cir. 2006); GJR Invs., Inc. v. County of Escambia, Fla., 132 F.3d 1359, 1367 (11th Cir. 1998). Thus, to establish an equal protection violation, the plaintiff must allege in his complaint that a similarly situated individual was treated better. See Griffin Indus., Inc. v. Irvin, 496 F.3d 1189, 1202 (11th Cir. 2007). By this standard, Plaintiff's equal protection claim fails.

Although Plaintiff alludes that Defendant intentionally discriminated against him, he does not allege sufficient facts that he was treated less favorably than a similarly situated federal employee receiving FECA benefits. See Roy v. Fulton Cnty School Dist., 288 F. App'x 686, 688 (11th Cir. 2008) (affirming the dismissal of an equal protection claim "because nowhere in the complaint d[id] the [plaintiffs] allege that [he] was similarly situated with any other parties"). At most, Plaintiff asserts that the ECAB awarded another federal employee reimbursement for chiropractic medical expenses under FECA, see Christopher Smith, Case No. 95-2631 (1995), but unjustly denied him reimbursement for his chiropractic expenses. (Doc. #17 at 33-35). Plaintiff, however, presented Christopher

Smith to the ECAB in support of his request for reconsideration, and the ECAB distinguished that matter from Plaintiff's case.  (Doc. #18-8 at 6).  Plaintiff is clearly trying to mask his dissatisfaction with Defendant's administration of his FECA benefits as a constitutional violation.  But, as with his due process claim, Plaintiff cannot baldly assert unequal treatment in order to state a colorable equal protection claim that falls within the narrow exception to FECA's prohibition of judicial review.

In sum, although the Court has construed the Amended Complaint liberally in light of Plaintiff's *pro se* status, it finds that Plaintiff has failed to allege any constitutional claim to satisfy the narrow exception to FECA's jurisdiction bar.  The Court, therefore, does not have subject matter jurisdiction over this case.  Since the Court has previously provided Plaintiff with the opportunity to submit an amended pleading, it will dismiss this action with prejudice.

Accordingly, it is now

**ORDERED:**

(1) Defendant United States of America's Motion to Dismiss Amended Complaint for Lack of Subject Matter Jurisdiction (Doc. #18) is **GRANTED**.  This case is **DISMISSED with prejudice** for lack of subject matter jurisdiction.

(2) The Clerk is directed to enter judgment accordingly, terminate any pending deadlines, and **CLOSE** the file.

**DONE** and **ORDERED** in Fort Myers, Florida this 2nd day of April, 2014.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record